May it please the court. My name is Theena Evangelis and I represent appellant Ashot Yegiazaryan in these consolidated appeals. I'd like to reserve three minutes of my time for rebuttal. In a series of three post-judgment orders that are on appeal today, the District Court ordered Mr. Yegiazaryan to turn over foreign trust assets that are under the exclusive jurisdiction of Lichtenstein Court. It also entered a worldwide injunction in violation of Rule 69 and this court's decision in Hillel, freezing over $115 million of my client's assets, which represents $22 million more than the underlying arbitration award. It also imposed a sanction of attorney's fees without articulating any basis for doing so, let alone making any findings of bad faith. This court stayed the turnover order and we respectfully request that it now reverse all three orders. The asset freezes and competing orders that Mr. Smagin has already secured in Russia and in Lichtenstein mean that my client now faces a serious threat of contempt because he cannot obey every jurisdiction's orders at the same time. This court's stay of the Mr. Smagin from seeking a contempt order in the District Court. In fact, he threatened to seek one on the eve of this court's order staying that turnover order. Is an impossibility a defense to contempt? I mean, you get cited for contempt, you can prove that it was impossible. You're not going to go to jail or have to pay a fine, right? Or not. I don't know enough about contempt law. Your Honor, I would certainly argue that, but I would argue that all of these are not so bad. Well, we are in a terrible position right now because of the conflicting orders. This court's asset freeze and the turnover order directly contradict the Lichtenstein court's asset freeze there. I want to ask about the turnover, but that's your third one. I don't know if that's doing it out of order. Well, I was going to start with that one, so why don't we? All right. The turnover just, you could say, well, it's exercising authority over what's in Lichtenstein, but it's just addressed to the defendant, right? That's exactly right. Thank you, Your Honor. Actually, no, it's about a trust and the California court. Well, is it about it? You're talking about this provision of the California law, which limits, what's the language? It says a beneficiary interest. Yes, Your Honor. Does it say beneficiary interest in there? I will pull that up in a moment. The California Court of Appeal in First Merit Bank actually rejected that very argument. There, the argument was made that it was about the individual and not about the trust, but when we're talking about a trust, it's a particular property. I understand, but let's say you have an ordinary trust where you have different parties in the different positions. You have a settler who settles it on a trustee who's, the settler is A and the trustee is B, and there's a beneficiary who's C, okay? So they're different people. In that situation, C has a beneficiary interest, right? But you wouldn't in normal, it's been a long time since I took trust in the states, you wouldn't refer to the settler as having a beneficiary interest. Your Honor, it's undisputed that my client is a beneficiary. I understand, but he could be, if he's also a settler, he presumably could be given an order in his capacity as settler, even if he's not required to do something in his capacity as a beneficiary. I mean, I know trust law treats these people differently, right? There are several, several points I'd like to make in response to that, and Your Honor's correct that the language of 709.010, to interest as a beneficiary of a trust, et cetera. As a beneficiary, so he may have an interest not as a beneficiary, such as the holder of a, such as the settler of a revocable trust that's completely revocable. How is that a beneficiary interest? Your Honor, my client is a beneficiary of the trust. He's one of several. However, I'd like to take a step back. Before we even get to section 709.010, we have another more fundamental problem, which deprives this. I understand. So you're sort of, you don't really want to argue about the beneficiary argument, which is the main argument in your brief. Now, you're sort of backing off of it? No, Your Honor. I absolutely believe that my client doesn't. Well, how does it hold up under ordinary trust law? That's what I'm not understanding with respect to your major argument. I understand you have other arguments, which may be dispositive, actually. But I'm having trouble with your main one, and you're saying, well, let's go to the others, then. Well, I think what this points up, at least to me, is that the Lichtenstein courts are currently adjudicating this very dispute. Now, Mr. Smoggin... But that could be, if you had an ordinary bank account, they could be currently adjudicating it, and this provision of the California law would not apply. Well, Your Honor, the Lichtenstein law governs this trust, and there is a proceeding that Mr. Smoggin himself initiated. I'm currently, at this point, asking about your reliance on the California statute. Yes. Are you just putting that aside because it looks weak now under questioning, or do you want to defend that? I believe that my client is. I know that he is a co-beneficiary. But he's also a settler, right? That is correct. So why couldn't, under that provision, a turnover order be given to him as a settler of what is in effect a revocable trust, even though, granted, another person, the beneficiary, who happens to be the same person as the beneficiary? What would be wrong with doing that? Well, Your Honor, it would violate the rights of the co-beneficiaries in Lichtenstein. Well, now, if you were the settler of a revocable trust, the beneficiary might have some right, but when it gets revoked, there's no more right. Well, Your Honor, it would be... First, it would violate Lichtenstein law. It would violate California Code of Civil Procedure 709.010, because when we're talking about a trust, there are reasons for this rule. This is a very sound rule. But the rule, by its term, says a beneficiary interest. Can I just ask, because I am confused, which of the orders are you two talking about? Turnover. We are talking about the turnover order. Okay, the turnover order is directed to the beneficial interest, not the settler's interest, right? That is correct, Your Honor. I can understand this dialogue, if we're talking about the asset freeze, maybe, but I don't understand it with respect to the turnover order. Thank you, Your Honor. Yes, it is directed to my client in his capacity as a beneficiary. And again, because this is complicated and the Lichtenstein courts are adjudicating this very issue, there's now... It's gone through a couple of levels of... Maybe I should ask Judge Wofford to explain it. I don't understand how it's direct. I thought the whole theory of it was because he had control over it. Well, the Lichtenstein... Beneficiaries don't have control over the trust. The settlers have control over the trust, right? The Lichtenstein court found that actually my client does not have pure control over the trust. He would have control only if the trustee acted illegally. Right, but those are... And you can instruct me on trust law. Whether you can revoke a trust, that goes to your powers as a settler, right? Your Honor... Beneficiaries don't revoke trust. That's correct. And this is directed at my client's interest as a beneficiary of the trust. And under the California Court of Appeals decision in First Merit Bank, that's something that cannot... We can't allow this sort of end run... I understand that. I'm just having trouble understanding the first part of that. So are there any developments in Lichtenstein? Is there anything that we don't know about? No, Your Honor. The latest thing is that there is an appeal that's pending or will be made... Before the court of last resort in Lichtenstein, is that where it is? Yes. The court of, I believe, the Supreme Court of Lichtenstein, and there is a stay of the order on appeal. If the court finds that this is really not a trust, is there a confirmation order on the arbitration pending in Lichtenstein? Yes, Your Honor. Mr. Smoggin initiated proceedings to domesticate the award in Lichtenstein as well. So if the court finds that this is not a legitimate trust... Just help me through with the decision tree. If the court in Lichtenstein says, really not a trust at all, at that point, what happens in Lichtenstein? Does it then move to the question of confirmation of the arbitration award? Yes, Your Honor. What is contemplated by the New York Convention and these procedures is that a party can go into the country where the assets are located and domesticate the award and seek a court of execution going after those assets. Is that likely to be moved on quickly in Lichtenstein? Things have been moving quickly in Lichtenstein. Thank you. The award itself has been confirmed, but the proceedings have been moving very quickly to go through whether the trust can be reached. Okay. So if the court finds against your client, then it is likely that the award will be confirmed and those assets will be available to Mr. Smoggin. Is that correct? And that would be the end of the matter without any action on the part of the Central District of California. Yes, Your Honor. I believe so. And the award has already been confirmed. So it's just a question of whether those assets can be reached. So what happens if the trust... Just follow the decision tree in the other direction. So what happens if the court finds in favor of your client, that is, that the trust is valid? If the trust is valid, then there will have to be some, whatever the procedures are in Lichtenstein for going after the interest in a valid trust. In California, for example, you would have to go through a certain set of procedures that would take into account the interests of the third parties, other beneficiaries. It would have to be reasonable. There are all sorts of procedures in California. And if the court upheld that, could Mr. Smoggin then go back into the Central District of California, go to Judge Real under 709.1010 and begin proceedings against the trust in Lichtenstein? Your Honor, if it's a valid trust... Well, I'm following the decision tree, assuming the Supreme Court of Lichtenstein upholds the trust as it's a valid trust. Then the court in California does not have jurisdiction to go after those assets. Why not? Why can't it go after under the provisions applicable to a trust? Because under 709.010, the judgment creditor has to petition a court having jurisdiction over administration of the trust. So we are many steps removed from that, but there is also a freeze in Russia. So I just want to make clear that the Lichtenstein assets are not the only... It's not the only bucket of assets that we're talking about, but none of these are in California. So the assets in Russia, Mr. Smoggin himself has valued those at over $300 million. Interestingly enough, he has never sought to confirm the arbitration award there. He has never sought to go after those assets, to execute on those assets. It's very curious, but it seems that he perhaps may want to collect in one place and double collect if there's some... The proceedings in Russia may not be the most trustworthy and it's unclear why, but he hasn't moved to go after those assets yet. Is that an argument you make in your briefs? That there's other money he could go after, so don't come after this money? No, Your Honor, there is other... Because I'm having trouble seeing how that's relevant. I mean, if you're trying to get money, you can go after a pot of money A before you go after a pot of money B, can't you? That's correct, Your Honor, but I'm just trying to see why it is unusual and, in fact, not typical and not intended for Mr. Smoggin to come here to California. And I'd like to turn to the world... Can I ask you a hypothetical? Let's assume that you have a situation where somebody has a debt against them, and instead of putting it in a trust, they just put it in a bank account in a foreign country. Is there any problem with an order to turn that over? No, Your Honor. Okay. That would be different. And that is... Most of the cases that Mr. Smoggin relies on, that's the critical distinction. So we have to... But it's subject to the law of the other country, and you can't actually, perhaps, would not be able to attach that money. You couldn't do that. All you have is just an order enforceable by contempt to repatriate that, take the money out of the bank and bring it back here. That's correct, Your Honor. And again, we have to think about what reach does the district court sitting in California have over these worldwide assets? And we would... And the one thing that you identify as keeping him from doing it in this case is that trust provision in the California statute, which says you can't under the trust, right? As well as the doctrine of primary exclusive jurisdiction, which this court's, the Ninth Circuit's decision in South Fork banned, and the Supreme Court's decision in Princess Lita. This is an ancient doctrine. It really does deprive the court of jurisdiction at the outset. I see my time is getting... Well, I think we're gonna have some more questions for you, so I will extend your time. So on the... So on the injuncted order, different from the turnover order. So what's infirm about this? Thank you, Your Honor. Because this is a money judgment, Rule 69 applies, and that provides that a money judgment is enforced by a writ of execution and proceeding, supplementary to, and in aid of judgment or execution must accord with state law. In this court, this... Now we're looking at California law and this court's decision in Hillel, where this court said California law does not authorize the sort of injunctive relief that the district court granted here in aid of execution of a money judgment. So we think this is a very straightforward question about... Which of the Hillel decisions are you referring to? The later one, 1996, Your Honor. And at page 854. And that would... That ends the inquiry. And again, because I'd like to just look at the landscape here, that's what's intended. We have to piggyback on state law, both on the turnover order and on the injunction, because these are post judgment orders in aid of execution of a... And collection of a money judgment. And it would perhaps be different if we were in another state and I know that, as I was doing my research, that Texas and Pennsylvania, I believe, have some provisions for injunctive relief. But California, as this court said in Hillel, does not. And it would... And there's... To read rule 69... Excuse me. Yes, thank you, Your Honor. I'm sorry. It's just I'm looking at Hillel. And so you're saying on 854 there, we held that California law does not allow the issuance of any sort of injunction as a supplement to execution efforts? I will pull up the case, Your Honor. But the court said that there, the party had not identified and the court had not identified any provision of California law that would allow it, nor has Mr. Smoggin, nor have we found. And so... But the order at issue in this case, wasn't it directed to a third party bank? And it was basically saying to the bank, not the debtor, not your client, right? Not the person in your client's position, but to a third party to pay over to my court registry this money. And I understand why a court might not have authority to do that. But with respect to the asset freeze order, given that the district court does have personal jurisdiction over your client, why can't the court direct an order to your client saying, don't do anything to dissipate assets that are otherwise... That I want to be available to help this person execute? Because, Your Honor, it would be injunctive relief nonetheless. The fact that it is... Why does that matter? Prohibition. Well, because for under Rule 69, for enforcement of a money judgment, the sole relief or remedy is a writ of execution provided that... Why can't you issue an... I don't understand why you can't issue an injunction in aid of that, if you're afraid that somebody is gonna dissipate the assets before anybody can get to them. Well, Your Honor... I understand that it's unusual, but it's not unheard of. Your Honor, it is... Again, going back to... I was going to say, if we read Rule 65 to authorize an injunction in the post judgment context with respect to a money judgment, it would effectively swallow Rule 69, which is limited. It's limited in this context to procedures available under state law, and Mr. Smoggin has not pointed to any provision of California law that would allow an injunction. And the Supreme... This strikes me as just sort of a general... Just kind of a general writ. I'm not sure that you have to have positive law that says injunctions in aid of execution are authorized. Well, Your Honor, the Supreme Court's decision in Grupo Mexicano dealt with this situation in the pre judgment context. I believe that they're analogous and the same principles that were... That animated the Supreme Court's decision in Grupo Mexicano also apply here in the post judgment context. We have to look at the fact that issuing all sorts of injunctions would undermine Rule 69. We have to follow the correct procedures. The assets are not here in California. They are located elsewhere. Yeah, but your client is. So the court's got personal jurisdiction over him. Yes, Your Honor. Which means that under standard principles, if you've got the defendant, you've got everything that the defendant owns. Well, Your Honor, that's pretty standard personal jurisdiction law. It is limited and he can sit for discovery, and there has been a debtor's examination. There has been discovery post judgment to determine where the assets are, but to allow a district court cannot, sitting in California, issue this worldwide injunction. And again, what we see with the turnover order... Well, it's an injunction against him. It just says don't dissipate these things. But it is injunctive relief, and we're talking about a money judgment. I think that's the key distinction. If this were a case involving infringement of a copyright, for example, and there were a judgment holding that to be an infringement and prescribing some sort of equitable relief or even restitution or something along those lines, then the district court would be acting with its equitable authority. It would not be a money judgment enforcement action. That would be different. So we submit that that is a critical distinction here. And we have to... Can I ask sort of a naive question? I see you're over your time. You don't challenge that you know, Your Honor. We don't, but... Why don't you just pay it? Your Honor, my client would love to. You can't? The assets in Russia are frozen. We cannot liquidate those assets. We cannot transfer them to Mr. Smogin right now because of the freeze there. But you have $300 million in the United States, according to you. It's not in the United States, Your Honor. Oh. No, Your Honor. The interesting thing here is we cannot... So you want to take the money out of Russia rather out of Russia than take it out of his money in Switzerland. So basically, I'm just trying to get generally what's driving your litigation position. It would be... There are ways to address this, but instead, Mr. Smogin has chosen to come into California, get a worldwide injunction. And then on top of that, the turnover order is really critical. I have to say, I know my time is over, but my client is really at risk of being held in contempt because Lichtenstein froze the assets. Why doesn't he just revoke the trust in Lichtenstein? Why is he fighting it so hard in Lichtenstein if he's not contesting the award? Your Honor, that's... I mean, this is a trust. There are other beneficiaries. It's not all his money. It is... In the courts in Lichtenstein right now, Mr. Smogin initiated that action. Again, and that's why I've asked... Why we have asked to reassign the firm to arbitration. I mean, your client is certainly fought tooth and nail for admitting that he owes the money. Is your fighting this hard? Your Honor, we had valid appeals. The court rejected them in London, but the fact that it was not meritorious in the end doesn't mean that we didn't think it was valid. But here, those are... The Lichtenstein trust was created with totally separate assets from something else not related to this dispute with Mr. Smogin. And we would just like an orderly way to resolve this. And I fear that if we are sent back, if there's anything on remand to the district court where we have the specter of contempt, where we have a Russian criminal proceeding that Mr. Smogin initiated against my client, and he was tried in absentia. He fled to the US. I fear what may happen. And so that's why we've asked that the court please reverse the orders and remand. And I would appreciate a couple minutes for... I'm going to give you time for a rebuttal, counsel. I appreciate that. Thank you, Your Honor. Mr. Pollard? Thank you, Your Honor, and may it please the court. My name is Michael Pollard, and I represent the appellee Vitaly Smogin in these three consolidated appeals. Just so we're all clear about which one we'll talk about, I'd like to talk about the turnover order first, if that's fine with the court. As we stand before you, this arbitration award, first of all, was granted by an arbitral panel. It's been confirmed in all appeals exhausted in England. It's been confirmed here, and there are no substantive defenses to the award raised on this appeal. It has been confirmed in Lichtenstein. There is no doubt that Mr. Egazarian owes my client the money from the arbitral award. All that this is about is Mr. Egazarian's effort to tell the district court, you can't make me pay you here. That's what this is about. Sounds like what it's about is that he wants to pay it out of money that's held in Russia rather than that he's gotten out of Russia. No, he doesn't want to pay it, Your Honor. He doesn't want to. I understand nobody wants to pay it, but I'm trying to pay you. Well, I understand that too, but he doesn't want to pay it because... And the point is, the question you raised about contempt powers, it's a really important point. He's here. This is where he is. This is where there's personal jurisdiction. But this man doesn't have a passport. But this is not where the assets are, apparently. That seems to be the problem, right? Well, except what we didn't hear one word of ever is a challenge to the finding that he has control over these assets. Okay, let's talk about the turnover order since that's where you wanted to start, right? So just help me understand the dialogue that Judge Rogers was having with your opponent because I was getting confused and that's why I interjected. I understand the turnover order to be directed to Mr. I hope I'm pronouncing it right, Egazarian's beneficial interest in that trust. It's directed to Mr. Egazarian in personum jurisdiction because he controls the assets of the Lichtenstein Trust. Right, but the only way your client is going to be entitled to collect that money in satisfaction of the judgment is... Could I finish? Sorry. Is if he's able to attach Mr. Egazarian's beneficial interest in that trust. That's how you get the money in your client's pocket. I disagree. Okay, why? The order is directed to Mr. Egazarian to take assets in his control in the Lichtenstein Trust and use them to pay my client. Right, but that's what I'm saying. He can do that in a number of different ways. Without in any way affecting his beneficial interest in the trust? How? Well, he controls the trust. He can direct the trustee to pay us. He can remove the trustee and appoint himself and pay us. He can, mirabile dictu, do what Judge Rogers suggests. Just say I'm going to pay this. I agree to it and give up the Lichtenstein fight. This is all about the refusal. He could, but California has a statute that specifies the procedure by which you can basically get access to the money that's held in that trust. California has two statutes. Well, one that governs trust. The other one you're relying on... Governs... Other assets. ...of a judgment debtor in the control of the judgment debtor, which is what Judge Reel found here. Yeah, but the more specific one that governs here is the one that applies to trust. I don't think so, because it talks about, as Judge Rogers pointed out, the interest of a beneficiary in a trust. There's two sentences in that section of the statute. Interest in the benefit... Interest... Let me get it exactly right. You got the language right. Would it not be clear to say he has an interest as the settler of the trust, as opposed to an interest, or as an interest as the trustee, rather than as an interest as a beneficiary? He has control of the trust. All of these things... You can call him the controller of the trust. I don't know how that fits. But if you have, for instance, a revocable trust, you're not a beneficiary when you revoke the trust in ordinary trust terms, right? Right. What are you? What's a word for what you are, other than beneficiary? You're in control of the trust. You're a settler who controls the trust. All right. If you're a settler who controls the trust, then you're not a beneficiary of the trust. Usually those are separate people. When they happen to be the same person, it gets confusing. And the case that counsel relies on for the interest of a beneficiary in a trust statute, first merit, couldn't make that point clearer. What was involved in that case were a beneficiary receiving periodic monthly payments from two spendthrift trusts. There couldn't be something more different than the purported trust that Mr. Egazarian created so that he retained control over his money here. It's a spendthrift trust created by a different settler to limit the spending of the beneficiary. That was administered in Ohio. And the court said, in order to get an assignment of that interest as a beneficiary in a trust, you had to go under 709-010B. That's first merit. Far removed from this case. This is a case where Judge Real found, because of the way that this trust was set up, and by the way, this isn't unusual. FTC versus Affordable Media, this court's decision about a Cook Islands trust making the same findings, even though the judgment debtor in that case tried to divest themselves of more of the assets than Mr. Egazarian has. They were found in contempt. What about Princess Lida and all of that? That's a different issue. That's a different issue. That's the prior exclusive jurisdiction. First of all, those cases, those two cases are about relationships between federal and state courts. They fly in the face of the New York Convention, which is about a confirmation of arbitration awards that contemplate parallel enforcement proceedings. First of all, it's the judgment in question. They're before the New York Convention? I'm sorry? Those cases are from before the New York Convention? They don't address international arbitration. They address water rights in Colorado as claims between state and federal courts, and they have nothing to do with this situation. But also it is a judgment in Liechtenstein isn't prior here because from the day that we filed the suit, we identified in an ex parte application the Karamoff Award, which had not yet come into Mr. Egazarian's possession, but we said this is probably going to be answerable. We identified it from the first moment in this case. And yet when it came in, it was immediate. It does seem like a Liechtenstein trust should be adjudicated, whether it is the settler or the beneficiary, should be adjudicated by the Liechtenstein court. Are we really going to make our district courts rely on the work of courts in other parts of the world to enforce their own judgments? Going to go to the Cook Islands, Liechtenstein? If this trust is set up in a way that this one is, where the settlor slash purported beneficiary controls all the assets, why not direct that fellow to do whatever is appropriate under Liechtenstein? Do whatever is appropriate. And by the way, he can comply with that. Well, because you might be telling him to do something that violates the law of a foreign sovereign, and I understand with these tiny little sovereigns it doesn't seem like it makes much difference. But the law should be the same whether it's France or Liechtenstein, right? We have an expert affidavit from our person that says how exactly he could comply with the district court order and comply with the terms of the trust and comply with Liechtenstein law. And if he doesn't do it... Counsel, isn't the problem, the problem from my perspective here, is that Judge Reel might issue an order with respect and issue findings with respect to the trust in Liechtenstein that would be contradicted by the Supreme Court of Liechtenstein. That is that Judge Reel might say it's not a valid trust. It's a sham trust, and he controls the whole thing, and so you can just pay it out. And the courts of Liechtenstein say this is a valid trust under Liechtenstein law, and he doesn't control it. It's in the hands of the trustee, and he's entitled, he has a beneficial share, but he doesn't have full control over it. Well, that flies in the face of this court's FTC versus affordable media case where the court said, where the court looked at the terms of the trust, said these people are in control, ordered the money repatriated to the United States and held them in contempt until they paid them, saying that the kind of asset secretion that is at the heart of these types of things... And was there a parallel proceeding going on in another court at the time in that case? I don't think so, but you shouldn't have to have parallel proceedings when you have... This is the only place there's personal jurisdiction over this man. I don't care what happens in Liechtenstein. He doesn't even have a passport. Liechtenstein isn't going to assert personal jurisdiction... Judge Rios got control over Mr. Yegizerian to the extent that Mr. Yegizerian controls the funds. That is the question in the Liechtenstein matter, is what kind of control does he have? But there's no challenge to his finding of control in this appeal at all. Where's that challenge? But you could still have a problem with a foreign sovereign if you tell someone here to go and do something that is in conflict with the law of the foreign sovereign. For instance, by silly analogy, you could say, go into his home in the middle of the night and get this money, it's yours. That you couldn't do. It's not a trust, it's just something about how Liechtenstein organizes its society that telling someone here to do something on pain of contempt that is problematic to do in Liechtenstein is a problem. Back to your point earlier in the conversation, which is that impossibility is a defense. But the only way this money is going to be paid, I think... Well, you could have impossibility as a defense, I understand that, but it seems like there ought to be some limit on what you can tell someone here to do in another country. You know, you can't just say you can tell him and he has a defense, he has an impossibility defense when he's ordered, for instance, in the absurd example, to go and get it in the middle of the night. That would be a problem, wouldn't it? I mean, you have to admit that that would be a problem to have that kind of an order. He's told to take money under his control and pay a debt that he acknowledges is due. He doesn't challenge the finding of control. Instead, while he knows that's an asset that's being chased in this case, he secretes it away in Liechtenstein where they won't have personal jurisdiction against him. In the meantime, there's the injunction. The court, there's no problem with that injunction. You know, counsel talked about how Grupo Mexicano is analogous. In Grupo Mexicano, it was a 5-4 decision by the Supreme Court. Justice Scalia wrote for the majority and said you can't have pre-judgment freeze orders. Okay. I asked her sort of a practical question, which really didn't govern the case. I have a similar practical question for you. Why can't you just win this in Liechtenstein? Because we still might not get the money. Why not? Because they won't have contempt power over him. But Liechtenstein has control over the money under their system, don't they? I mean, the money's there. They have power over the money. Trust. I'm sorry? He controls the trust. It's a valid trust is the way they set it up. He's got control. So you can't, under the law of Liechtenstein. And we're not going to get personal jurisdiction over him in Liechtenstein because the man doesn't have a passport. This is where he is. So I can finish with Grupo Mexicano. Justice Scalia said that there is post-judgment freeze orders under the court's equitable power because, dating back to pre-1787, the English courts recognized what are called creditors' bills, which allowed a judgment debtor to go after. So there are not, of the nine justices in that Grupo Mexicano case, there wasn't one who thought that the court's inherent equitable powers would not permit an asset freeze after judgment. Can I ask you this? Because I'm confused about how Grupo Mexicano might apply here. I guess I thought that Rule 69 funneled us pretty much exclusively to California state law to figure out what kinds of powers the district court in this situation can exercise. Am I wrong in that? It's for things that are in aid of execution. This is just a freeze order. Hold on. But isn't a freeze in aid of execution? No, no. This is just preserving the status quo because the execution is the ordering of the money here. And so 69 takes us for the enforcement part to a California statute. One of those two, we think it's the one that controls. But so you're saying that once you have a confirmed judgment in a federal district court in California or wherever, that court still retains inherent equitable powers to do sort of other things outside of Rule 69? Yes. And what's your authority for that? I think Grupo Mexicano says it, and we have a bunch of cases that we cite under Rule 65 as well from federal courts around the country, none of which require that there be any sort of equitable relief sought. So I can give you the names of those cases. I remember one was from the Fifth Circuit. I do remember that one. I don't remember any authority from our circuit that said that Rule 65 had anything to do in the post-judgment context where Rule 69 otherwise seems to govern. Right. But Grupo Mexicano wouldn't have been decided the way it was if that weren't true. No, I don't think that's right. I think the problem is that Rule 69, I think, occupies the field post-judgment. I don't think there's anything left in terms of the court's inherent equitable powers to issue injunctions here or there or direct it at other people. Well, I think Grupo Mexicano says it. The cases we cite from the federal courts say it. A number of other courts have said it, and I don't think we've really seen many cases cited by the other side to the contrary. They concede that it can be done in aid of equitable relief, so the parties have devoted a large part of the briefs talking about how a confirmation proceeding is equitable, dating from the days of Justice Cardozo, whether it's viewed as specific performance of a contract. They've conceded that you can issue an order to someone who has a bank account abroad to bring the money back here. That's an injunction, isn't it? Which is interesting because in the discovery depositions where we're discovering assets, the reason Mr. Egazarian said he set up the trust was because he couldn't open a bank account. Interesting. I didn't follow that. He likens this to the it's in lieu of a bank account because you can't open up a bank account because he's on the Interpol list. So if you can attach a bank account and this is akin to a bank account, it's really under his control. Counsel, you turned to the question of the attorney's fees. Yes, on the attorney's fees, we think that, you know, this entire proceeding, and as I stand before you, there still hasn't been a defense to owing the money and there hasn't been a good one made in this case, and so the court awarded it for that bad refusal to pay the money. But, you know, losing a suit is not the same as bad faith. I know. I think this record is replete with findings of the bad faith refusal to pay, and that's what I think he awarded. Where are the findings? There were not specific findings. Okay. Isn't that a problem? Well, if it is, then you would remand to the district court to make the findings. That's what I think you would do. Did the judge tell us what his authority was? No, it's a little late on that, too. Okay. All right. So we kind of have two problems, findings and law. Law and fact. So other than that, it was a good order? I think it's amply supported. You know what? I think it's amply supported by the record. I do. I do. Okay. All right. Anything further, counsel? I think that covers everything, Your Honor. Thank you very much. I'd ask that you affirm all three orders. Okay. Thank you, Mr. Pollard. Ms. Evangelos, we'll start with two minutes. Thank you, Your Honor. A few points. First, we absolutely do contest that Mr. Yagazarian has control over the trust. Our reply brief in the turnover order appeal at pages 20 to 21 there. This is not a revocable trust. It is irrevocable. There is a third-party trustee. That trustee is – A hypothetical. Yes, but I wanted to make clear – I'm saying it was, but I'm just trying to figure out how the trust law works. Yes, Your Honor. Thank you. And I just wanted to make clear that there is a third-party trustee, CTX, and that trustee has discretion whether to grant my client funds from time to time. He cannot direct the trustee. He cannot remove the trustee. There are allegations to that effect in Lichtenstein. That is in the litigation there. And Mr. Smoggin initiated that proceeding. So to the extent he doesn't trust Lichtenstein courts, he did seek out that proceeding. Next, I wanted to just make clear that counsel cited the FTC v. Affordable Media case. That is different. Rule 69 did not apply there because it was an order of restitution. It was equitable relief. It was not a money judgment. So that's why it's absent from the discussion there. And, again, we have to proceed under Rule 69 because this is a money judgment. And to go back to the bank account abroad, the hypothetical, Your Honor, that if under California law, because we look to Rule 69, we look to California law, we look to the general turnover statute, and that would apply perhaps to a bank account. Again, we'd have to look at the situation. But it doesn't allow freewheeling injunctive relief. There are specific procedures, and if you can find one. But the relief is injunctive though, right? It's a turnover order. I don't know what a turnover order is. I mean, if the order won't turn over the money, you're telling somebody to turn it over the money. What if he doesn't do it? That is a specific procedure that is allowed by California courts. But a general worldwide injunction is not. What happens if they violate it? Then I, you know, you would be in violation of a court order. Oh, but that doesn't answer my question. I'm trying to get at the nay. You're relying on this provision. I'm asking you about the contours of that relief. Yes, well, I. You don't seek contempt when they, if he goes into court and says, Well, I got an order tough, I'm not doing it. No, Your Honor, that contempt is the type of procedure when a party is in violation of a court order. That suggests that it's injunctive, right? But I would have to look at that. But I just wanted to point out to Your Honor that we weren't saying that a pure worldwide injunction is authorized. There's something out there which allows it. There is something, but not for a trust. Not for a trust. Well, I understand. Then you get back into what we were talking about before. It's not an argument that there's no way to get anything but a judgment against property under the California scheme that's incorporated by the federal scheme. There are unique procedures that are specific to other situations. Are they equitable or are they legal? Well, that's an interesting question, but here we have. How can they be anything but equitable if the relief is based on the fact that he's present? Well, so I want to say that he's also submitted to jurisdiction in Lichtenstein. There was a discussion about that. My client has submitted. So this is not the only jurisdiction with personal jurisdiction over him. And Mr. Smoggin has attached my client's beneficial interest in the trust in Lichtenstein in that proceeding. So, again, we have the two colliding jurisdictions on that issue. He's a party in Lichtenstein? Yes, he has submitted to jurisdiction there. Submitted to jurisdiction to the extent of the assets that he has in Lichtenstein or for all purposes? Your Honor, I. That makes a huge difference. I know that. One of those is quasi-in rem and the other is in personam. Well, I don't have the specifics of that under Lichtenstein law, but I do know that he is. If it's quasi-in rem, he really didn't have much choice as to whether he submitted to jurisdiction. They had his money. I think it probably is that situation, Your Honor, but that proceeding, as I mentioned, is over the trust. So, again, if the court has no further questions, I thank you for the extra time. Thank you, counsel. This is a complicated case. We do appreciate the arguments of counsel, and it was well braved. Thank you very much. Thank you, Your Honor.
judges: Rogers, Bybee, Watford